REGINALD R. KOEHN, APPELLANT, v. UNION FIRE INSURANCE COMPANY, A CORPORATION, ET AL., APPELLEES.

40 N. W. 2d 874

Filed January 27, 1950. No. 32668.

*Waring & Waring,* and *Kirkpatrick & Dougherty,* for appellant.

*Davis, Stubbs & Healey, John Mekota,* and *Thomas J. Keenan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee, Union Fire Insurance Company, for a consideration, issued and delivered to Reginald R. Koehn, the appellant, a contract of liability insurance protecting him, within the terms thereof, from loss because of

damage done any person or property of others by the negligent operation of a motor vehicle by him, and obligating the appellee at its expense to defend any suit brought against him on any claim of that character. Appellant seeks to recover on the contract from appellee the amount of a judgment rendered against him in favor of Dale Bruntz in a suit for damages alleged to have been caused by the negligent operation of a motor vehicle by him and the expense of defending the suit, which the insurance company refused to do on notice given and demand by him. A demurrer of the insurance company to the petition of appellant was sustained, he elected not to plead further in the case, and it was dismissed. Dale Bruntz, appellee, made no appearance. The contest in this court is between Reginald R. Koehn and Union Fire Insurance Company.

Appellant by his petition alleged that the insurance contract obligated appellee to indemnify him against bodily injury or property damage caused to any person or property of others by his negligent use of a Chevrolet automobile owned by him and described in the contract, and if he was sued on a claim that he had negligently caused such injury to person or property, the insurance company at its expense would defend him in any suit on any claim of that character. A copy of the insurance contract is made a part of the petition and contains the provisions: "IX. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES. If the named insured who is the owner of the automobile acquires ownership of another automobile and so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date; (a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or (b) if it is an additional automobile and if the company insures all automobiles owned by the named insured at such deliv-

ery date, but only to the extent the insurance is applicable to all such previously owned automobiles; provided, under coverages D, E, F, G, H, I and J, when a limit of liability is expressed in the declarations as actual cash value, such limit shall apply to such other automobile, and when a limit of liability is so expressed as a stated amount, such limit shall be replaced by the actual cash value of such other automobile, but any deductible amount so expressed shall apply in either case. This insuring agreement does not apply: (a) to any loss against which the named insured has other valid and collectible insurance, or (b) except during the policy period, but if such delivery date is prior to the effective date of this policy, the insurance applies as of such effective date. The named insured shall pay any additional premium required because of the application of the insurance to such other automobile. The insurance terminates upon the replaced automobile on such delivery date." Appellant further alleged that, after the effective date of the insurance contract, he purchased an additional automobile, to wit, one 1936 two-ton Dodge truck, and all automobiles then owned by him were insured by appellee; that on the day of the purchase of the truck appellant parked it on U. S. Highway No. 6 so that a part of it was on the shoulder and a part on the paved portion of the road, and an automobile in which Dale Bruntz was riding was driven into the rear of the truck and he thereby suffered personal injuries; that he brought suit against the appellant for damages on account of his injuries and expenses incident thereto on the claim that careless operation of the truck by appellant was the cause of his injuries and damage, and he recovered a judgment of $2,500 against him; that he gave timely notice to appellee of the filing and pendency of the suit of Dale Bruntz and made demand that appellee defend it at its expense; that he tendered to appellee an additional premium on account of his purchase of the truck, and gave timely notice of his claim of

its automatic insurance under the terms of the insurance contract in reference to newly acquired automobiles; that appellee returned the amount tendered as additional premium, and denied any liability to appellant; and that he, at his expense, did all things necessary to defend the suit brought against him by Dale Bruntz, and the expense thereof was $1,075.20. It is these amounts, with interest, costs, and attorneys' fees which appellant seeks to recover in the present action.

This appeal presents for determination the correctness of the ruling of the district court on the demurrer and its judgment of dismissal of the case.

The demurrer is special and general. Its first assignment is that the court was without jurisdiction of the subject matter of the action. This was overruled in the district court. There is no complaint made of this ruling, and it requires no further consideration.

The second ground of the demurrer is that another action to which the appellant and appellees were parties involving the same subject or cause of action was pending and undisposed of in the court where this suit was commenced. The petition in this case contains no statement concerning the pendency of any other action. It on its face discloses nothing from which it could be ascertained or inferred that any other action was pending concerning the parties to this case or the subject thereof or at all. The rule generally is that a court will not in one case take judicial notice of its record in another case. Loup County v. Rumbaugh, 151 Neb. 563, 38 N. W. 2d 745; Johnson v. Marsh, 146 Neb. 257, 19 N. W. 2d 366. Appellee is aware of this difficulty and weakness and seeks to eliminate it by insisting that the district court was justified in taking judicial notice of the record in that court of a prior case by the doctrine constituting an exception to the general rule and recognized and applied by this court in former cases to the effect that: "* * * where cases are interwoven and interdependent and the controversy involved has already

been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action." Witzenburg v. State, 140 Neb. 171, 299 N. W. 533. See, also, Johnson v. Marsh, *supra;* Loup County v. Rumbaugh, *supra.* The argument of appellee in this regard is neither convincing nor valid. The exception to the general rule recognized in those cases has no application to the rule which is controlling in this case. This is made clear by the reference to Witzenburg v. State, *supra,* in In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923, as follows: "The rule in those cases indicates that this court will take judicial notice of final orders of this court made in the same case on a former appeal or in other cases which are so interdependent as to warrant the application of the rule. These are exceptions to the general rule warranted from the necessity of giving effect to former holdings which finally decide questions of fact and law. The rule established by the Witzenburg case does not and was never intended to apply to the situation now before us." The language "situation now before us" used by the court in that case referred to the action of the district court in looking beyond the pleading in determining whether or not an amended petition stated a cause of action. A defendant may interpose the objection of another action pending by a demurrer to a petition only when it appears on its face that there is another action pending between the same parties for the same cause. § 25-806, R. R. S. 1943. The district court could not know, and this court may not consider whether or not another action for the same cause between these parties was pending when this case was commenced. The petition in this case furnishes no information on that subject, and all other means of information is excluded in testing the sufficiency of the petition by demurrer. In passing on a demurrer to a petition, only the allegations of fact well

pleaded therein may be considered by the court. It must assume that the facts are as alleged, cannot consider the existence of any fact not stated therein, and cannot consider extrinsic facts in determining whether or not a petition states a cause of action. The court may not look beyond the pleading against which the demurrer is directed. Horrigan v. Quinlan, 149 Neb. 538, 31 N. W. 2d 430; In re Estate of McCleneghan, *supra;* Robert v. Hefner, 81 Neb. 460, 116 N. W. 36; 41 Am. Jur., Pleading, § 208, p. 439, § 246, p. 465; Tomes v. Thompson, 112 Conn. 190, 151 A. 531, 72 A. L. R. 297; Rembert v. Ellis, 193 Ga. 60, 17 S. E. 2d 165, 137 A. L. R. 479. This is an independent suit. The record of any other pending action was not before the district court in passing on the demurrer. It could not be until some issue of fact or law was properly raised requiring or permitting an investigation thereof. The district court erred in sustaining the second ground of the demurrer.

The third reason stated for the demurrer, that the petition fails to state facts sufficient to constitute a cause of action, was sustained by the district court. The correctness of this ruling is challenged. A determination of this depends upon the meaning of the provisions of the insurance contract. An insurance policy should be construed as any other contract to give effect to the intent of the parties at the time it was made. The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted. There is, however, a difference between a favorable construction and a favorable finding for the insured. The former does not mean imposing upon the insurer a gratuitous obligation not justified by the usual meaning of the words

employed. In giving effect to this principle of law, it is imperative that the contract made by the parties shall be respected and that a new contract is not interpolated by construction. Construction ought not to be employed to make a plain agreement ambiguous for the purpose of interpreting it in favor of the insured. The policy should be given meaning and effect according to the sense of the terms which the parties have used, and if they are clear they should be taken in their plain and ordinary sense. 44 C. J. S., Insurance, § 289, p. 1136, § 297, p. 1166; 29 Am. Jur., Insurance, § 156, p. 171, § 157, p. 172, § 166, p. 180; Peony Park v. Security Ins. Co., 137 Neb. 504, 289 N. W. 848; Smith Motors v. New Amsterdam Casualty Co., 143 Neb. 815, 11 N. W. 2d 73; Pennsylvania Casualty Co. v. Suburban Service Bus Co., —— Mo. App. ——, 211 S. W. 2d 524; Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425. This is precisely and tersely summarized and expressed in Moffitt v. State Automobile Ins. Assn., 140 Neb. 578, 300 N. W. 837, as follows: "* * * the court must not indulge in scholastic subtleties to make words with certainty of meaning ambiguous in order to apply the rule." The responsibility and work of the court is decreased and the case is simplified by the failure of either of the parties to insist that the insurance contract is ambiguous. One of them substantially concedes that there is no ambiguity in the policy, and the other asserts that the contract is plain and unambiguous.

The pertinent provisions of the contract of insurance are found in the parts thereof designated "SCHEDULE OF COVERAGE AND DECLARATIONS" and "INSURING AGREEMENTS." The declarations include the name of the insured, Reginald R. Koehn, an individual whose address is Exeter, Nebraska, and whose occupation is farming. The coverage and description of the automobile are in usual form, and the specific car is described as: 1941 Chevrolet, Model MD, 6 cylinders, 5 passenger coupé. "Item 5. The purposes for which

the automobile is to be used are BUSINESS AND PLEASURE (a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'Commercial' is defined as use principally in the business occupation of the named insured * * * including occasional use for personal, pleasure, family and other business purposes." The insuring agreements include: "IX. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES. If the named insured who is the owner of the automobile acquires ownership of another automobile and so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date; (a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or (b) if it is an additional automobile and if the company insures all automobiles owned by the named insured at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles; * * * The named insured shall pay any additional premium required because of the application of the insurance to such other automobile. * * * X. POLICY PERIOD, TERRITORY, PURPOSES OF USE. This policy applies only to accidents which occur * * * during the policy period, while the automobile is within the United States of America, * * * and is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

Appellant says that he owned one passenger automobile and secured a contract of insurance from appellee to pay compensation for injuries to any person and damage to property of others resulting from the negligent operation by him of his automobile; that the contract provides for automatic insurance for a newly acquired automobile by the insured; that he bought, while the contract was in effect, a two-ton truck, gave notice thereof as required, and offered to pay an ad-

ditional premium; that it is an additional automobile; and that because thereof the insurance afforded by the policy became and was automatically applicable also to the other automobile—the newly acquired truck—as of the time of its delivery to appellant. He oversimplifies the problem. It cannot be solved so simply and summarily. The recited facts may be conceded and accepted, but not the conclusion. There are other provisions of the policy not noticed or discussed or reason assigned for disregarding them, except a plea for a liberal interpretation in favor of the insured.

The liability of appellee is measured by the policy. It covers the liability that was within the intention of the parties as expressed therein. The policy was written for a specific designated automobile, a five passenger coupé, and did not cover or apply to a two-ton truck, unless by operation of the part of the policy herein quoted from the insuring agreements, frequently referred to as the automatic insurance clause. It is stated therein that such automobile coverage is limited to "such insurance as is afforded by this policy" and applies only "to the extent the insurance is applicable to all such previously owned automobiles." The coverage provided by the contract of insurance for the Chevrolet automobile described therein must be determined from the entire contract. The intention of the parties is clearly expressed as to this. The declarations of the insured as stated are representations to the insurer as to the character or type of risk undertaken and information for determining a rate for the insurance. The declared purpose of the use of the automobile insured was business and pleasure. The policy offered a choice between "business and pleasure" and "commercial," and these were immediately and plainly defined, the former as personal, pleasure, family and business use, and commercial as used principally in the business occupation of the insured, including occasional use for personal, pleasure, family, and other business purposes. The in-

tention to limit the risk in harmony with the use set forth in the declarations is again clearly expressed in the provision of the insuring agreements that the "policy applies only * * * while the automobile * * * is owned, maintained and *used for the purposes stated as applicable thereto in the declarations.*" (Emphasis supplied.)

The classification "business and pleasure" in view of the provisions of the policy designates use of a passenger automobile by the insured and his family for pleasure and business as such a vehicle is generally used. The "commercial" classification designates use principally in the business occupation of the insured and an occasional use by insured and his family for pleasure and business as a vehicle such as a truck or bus is generally used. The terms of this contract will not permit a conclusion that a reasonable person would understand that the automatic insurance clause removes the restriction as to use and brings commercial vehicles automatically under the protection of a private automobile liability policy. If such a classification were permissible, if this clause lets in any newly acquired motor vehicle, an insurance company could find itself on a risk of a newly acquired fleet of semitrailer moving vans or a fleet of transcontinental passenger busses as a result of the issuance of a policy on one private passenger automobile. The additional automobile is in this case a two-ton Dodge truck. No reasonable person could understand that it was intended to be classified with the same purposes of use as a Chevrolet passenger coupé. It is common knowledge and experience that the use of such a motor vehicle is principally in a business occupation. The policy involved provides coverage whenever the insured acquires ownership of an additional automobile and the company insures all his automobiles, and if the additional automobile may be classified for the purposes of use stated in the policy. The situation involved in this case does not meet the second requirement. The position taken in this case

by appellant wholly disregards the following limiting words of the contract: "* * * such insurance as is afforded by this policy" and "to the extent the insurance is applicable to all such previously owned automobiles" and "policy applies only * * * while the automobile * * * is owned, maintained and used for the purposes stated as applicable thereto in the declarations." To justify a finding for appellant the clause of the policy relative to automatic insurance must be rewritten and the words of it now must be ignored. If the clause is understood to apply to a newly acquired automobile only when it is one intended for use for the purposes within the classification applicable to the original automobile covered by the insurance in question, a reasonable meaning is given to the words of the contract.

It was proper for the insurer to limit the coverage on any newly acquired vehicle to the use stated in the declarations in the policy in order that the risk assumed on the new vehicle would be the same as that on the automobile specifically described in the policy. Maryland Casualty Co. v. Toney, 178 Va. 196, 16 S. E. 2d 340.

This form of policy is relatively new and there are few authorities construing the automatic insurance provision of the policy in this case and others of like import. Home Mutual Ins. Co. v. Rose, 150 F. 2d 201; Mitcham v. Travelers Indemnity Co., 127 F. 2d 27; Aetna Casualty & Surety Co. v. Chapman, *supra*. No case has been found in which the exact contention made by appellant was raised or decided.

The appellant purchased insurance protecting him from liability in the use of his private passenger automobile in pleasure and business. He did not choose an available commercial coverage. His liability for damages arose out of the operation of a commercial type automobile, a truck. His present liability as described in the petition is without the terms of his insurance contract. The court properly sustained the demurrer to

the petition on the ground that it does not allege facts sufficient to constitute a cause of action.

The judgment of the district court should be, and is, affirmed.

AFFIRMED.