ROBERT E. GRIFFIN, SPECIAL ADMINISTRATOR FOR THE
ESTATE OF JOSEPH VINCENT MORRONE, DECEASED,
AND MARY MORRONE, INDIVIDUALLY AND AS MOTHER
AND NATURAL GUARDIAN OF JOSEPH V. MORRONE,
JR., A MINOR, AND JENNIFER LYNN MORRONE, A
MINOR, APPELLANTS, v. GOVERNMENT EMPLOY-
EES INSURANCE COMPANY, RESPONDENT.

No. 5936

January 26, 1970                    464 P.2d 502

*Wiener, Goldwater & Galatz, Ltd.,* and *J. Charles Thompson,* of Las Vegas, for Appellants.

*Morse, Graves, Parraguirre & Rose, Ltd.,* and *Kent W. Michaelson* and *Allan R. Earl,* of Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

The narrow issue presented for our consideration on this appeal is whether the insolvency of a tort-feasor's insurance carrier may be considered a "denial of coverage" within the meaning of the uninsured motorist protection clause of an insurance policy. The district judge ruled that insolvency of the tort-feasor's insurance carrier did not constitute a denial of

coverage within the context of the policy. We do not agree, and we reverse the ruling of the lower court.

In 1964, respondent, Government Employees Insurance Company, issued a policy of automobile insurance naming Joseph V. Morrone, now deceased, as the insured. That policy provided, in Part IV (Coverage J), for protection against uninsured motorists, as follows:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . . ."

The policy identified an *uninsured automobile,* including a trailer, as follows:

"(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility laws of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, *or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder . . . ."* (Emphasis added.)

On May 2, 1965, Joseph Vincent Morrone was killed in an automobile accident in Clark County. The driver of the other vehicle involved in the accident was insured by Republic Casualty Company of Little Rock, Arkansas, which company thereafter was placed in receivership and declared insolvent. Appellants commenced this action in the district court to recover from Mr. Morrone's insurer under the provisions of the "uninsured motorist clause" of his policy. Government denied liability, claiming that Republic had not yet "denied coverage," but was only insolvent.

Morrone's policy was issued in 1964, prior to the amendment of NRS 693.115, approved April 23, 1969, which provides in subsection 6, paragraph (b), that:

"6.   As used in this section, 'uninsured motor vehicle' means a motor vehicle:

. . . .

"(b) With respect to the ownership, maintenance or use of

which the company writing any applicable bodily injury liability insurance or bond denies coverage *or is insolvent; . . . ."* (Emphasis added.)

Even before the 1969 amendment of NRS 693.115, courts in other jurisdictions had interpreted "denial of coverage" as used in uninsured motorist clauses of insurance policies to include insolvency. As Chief Justice Kenison said in McCaffery v. St. Paul Fire & Marine Ins. Co., 236 A.2d 490, 492 (N.H. 1967): "One who has an insurance policy backed by an insolvent carrier has a paper tiger to frame on the wall but both he and the party he injures are just as unprotected as where there is no insurance at all."

We agree with the court in Koehn v. Union Fire Ins. Co., 40 N.W.2d 874, 878 (Neb. 1950), that: "The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted."

In the instant case it is clear that the insured bought insurance for "protection against an uninsured motorist"—pure and simple.

As the court said in Stephens v. Allied Mut. Ins. Co., 156 N.W.2d 133, 137 (Neb. 1968):

"The uninsured motorist on the highway is a real risk. He is a real risk because of his probable inability to pay or respond for damages for negligent driving. The purpose of the statute and this particular clause is to eliminate that risk. To subdivide or apportion this risk and to make it dependent upon the whimsical uncertainty of solvency of an unidentified and uncertain tort-feasor insurance carrier is both unrealistic and unreasonable. It invokes an entirely unrelated and undeterminable factor that mitigates and lessens the accomplishment of the purpose of the statute and the area of effectual coverage sought to be reached by the voluntary inclusion of the clause in the insuring provision. *The majority rule, almost without contradiction, is that where uninsured motorist statutes or policy provisions have defined an uninsured motorist in the same language as was used in the present policy, subsequent insolvency of an insurer constitutes a denial of coverage within the meaning of the provisions of the policy or statute. [Citations omitted.]"* (Emphasis added.)

We reverse the ruling of the district court and award appellants their costs on this appeal.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.